SAVORETTI

v.

UNITED STATES ex rel. PINCUS.

No. 14917.

United States Court of Appeals,
Fifth Circuit.

June 28, 1954.

No attorney for appellant.

Millsaps Fitzhugh, U. S. Atty., Memphis, Tenn., for appellee.

Before ALLEN, MILLER and STEWART, Circuit Judges.

STRUM, Circuit Judge.

Petitioner below, Hyman Pincus, was discharged on writ of habeas corpus from custody of the Director of Immigration at Miami, Florida, who was holding him under a deportation warrant. The Director appeals.

The warrant charged that petitioner was unlawfully in the United States (1) in violation of the Immigration Act of June 28, 1940, in that he was not properly documented for entry, and (2) in violation of the Act of February 5, 1917, in that he had falsely represented himself to be a United States citizen when he returned to Miami from a fishing trip to Bimini, October 7, 1950. The Board of Immigration Appeals dismissed the first charge as unsupported by the evidence, but sustained the second, and petitioner was being held for deportation under that charge, when he was released by the writ of habeas corpus here under review, 114 F.Supp. 574.

The evidence is that petitioner is a native of Austria-Hungary, but now stateless. He was admitted to the United States as an alien, for permanent residence, January 7, 1900, since which time he has resided here. Though still an alien himself, he has a child and grandchildren who are citizens of the United States and who would be affected by his deportation.

Pincus is an ardent fisherman, in which pastime he frequently engages. During October, 1950, he was invited to join a fishing party putting out from Miami, to fish near the coast of Florida. It was the intention to fish amongst the Florida Keys, but bad weather forced a cancellation of those plans, and the "bosses" of the party decided to run over to Bimini, a small island about forty miles off the Florida Coast, where fishing is usually good.

Meanwhile, there had been very substantial drinking aboard the fishing craft, in which petitioner freely participated. He was asleep when the boat reached Bimini, and returned to Miami next morning without having left the

Douglas P. Lillis, Dist. Counsel U. S. Immigration Service, James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

David W. Walters, Miami, Fla., for appellee.

Before STRUM, Circuit Judge, and DAWKINS and HOOPER, District Judges.

boat, and without having learned that he had been in Bimini before his arrival there. The evidence clearly preponderates that petitioner did not know the destination of the vessel had been changed from the Florida Keys to Bimini, as petitioner was "pretty well in his cups" at the time.

When petitioner returned to Miami from the fishing trip, he falsely stated that he was a citizen of the United States, thereby, so it is charged by the District Director of Immigration, avoiding inspection.[1]

■ The word "entry," as used in sec. 19(a) of the Immigration Act of February 5, 1917,* does not include every return of an alien from a foreign country to the United States. Thus in Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17, more than five years after an alien had entered the United States legally, he shipped on an American ship bound from Los Angeles to New York, during war time. The ship was torpedoed, but the alien was rescued and taken to Havana, Cuba, whence he was returned to the United States. He neither planned nor controlled his being taken to Havana. It was simply an exigency of rescue. Within five years after his return from Havana to the United States he was convicted of a crime involving moral turpitude and deportation proceedings were commenced, based upon his alleged illegal "entry" in returning to the United States from Havana. It was held that he was not subject to deportation, as his return to the United States was not the "entry" of the alien to the United States within the meaning of sec. 19 (a) of the Immigration Act of 1917. It was merely a return from an involuntary and unintended absence from the United States due wholly to fortuitous circumstances. So far as petitioner is concerned, his departure from the United States was quite accidental.

And in Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878, an alien was traveling from Buffalo, New York, to Detroit, Michigan, by train. He did not know that the railroad passed through Canada for part of the distance. This resulted in his departure from and return to the United States, which occurred at night while he was asleep, and without his knowledge or intention so to do.

The Second Circuit properly held that this return did not constitute an "entry" within the meaning of sec. 19(a) of the Act of 1917, supra, as the alien had no part, either in planning or executing, his departure or return. To hold otherwise would rest the privilege of a lawfully admitted alien's continued residence in the United States upon a most precarious basis. Indeed, the matter would often be determined, as was attempted here, by the most trivial and capricious circumstances. Such was not the intent of Congress. Yukio Chai v. Bonham, 9 Cir., 165 F.2d 207; Schoeps v. Carmichael, 9 Cir., 177 F.2d 391.

■ While it is true that statutory language should be interpreted whenever possible according to common usage, some terms acquire a special technical meaning by a process of judicial construction. So it is with the word "entry" as used in sec. 19(a) of the Act of 1917.

In Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17, the Supreme Court narrowed its former definition of "entry" even more by holding that an alien does not make an "entry" from a foreign country if his arrival in the foreign country was unintentional. See Barber v. Gonzales, 74 S.Ct. 822, note 2.

■ This petitioner did not consciously nor intentionally depart United States jurisdiction. He had no intention to go to a foreign country. He had no part in fixing or changing the fishing location.

---

1. Section 19 of the Act of February 5, 1917, provides, *inter alia*, that "at any time within three years after entry, any alien * * * who enters without inspection, shall, upon the warrant of the Attorney General, be taken into custody and deported".

* Now 8 U.S.C.A. § 1251.

He simply went out for a fishing trip in the Florida Keys, and woke up drunk the next morning in English waters about forty miles off the Florida Coast, from which he immediately returned without having left the fishing craft or setting foot on foreign soil. Anchoring the vessel off Bimini during the night was brought about by purely fortuitous circumstances, mainly a change in the weather, in which the petitioner had no part. The facts here do not constitute an "entry" as contemplated by the 1917 Act.

In United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758; United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298, there is language which, taken from its context, indicates that every return of an alien to the United States from a foreign country constitutes an "entry" within the meaning of sec. 19(a) of the Act of 1917. But those were cases decided on different facts, in which the alien clearly expected or planned to leave the United States and enter a foreign port or place, from which he later re-entered the United States. See—Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. He was not, as here, taken to a foreign jurisdiction through inadvertence.

The order of January 7, 1900, authorizing petitioner's permanent residence in the United States as an alien was still in effect when he returned to Miami on October 7, 1950. We have shown that his return from English waters, just off the coast of Florida, was not an "entry" within the meaning of the 1917 Act. While highly reprehensible, his false statement on October 7, 1950 that he was a citizen of the United States is, for the purpose here under consideration, immaterial. That alone will not support the deportation order.

Affirmed.