**UNITED STATES ex rel. Francesco BRANCATO, Relator,**

v.

**John M. LEHMANN, Officer in Charge, Immigration & Naturalization Service, Cleveland, Ohio, Respondent.**

**Civ. A. No. 32108.**

United States District Court
N. D. Ohio, E. D.

Oct. 11, 1955.

Henry C. Lavine, Cleveland, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

Petitioner, Francesco Brancato, an alien and native of Italy, who has been ordered deported, challenges the validity of the order of deportation in his petition for writ of habeas corpus. Petitioner alleges several grounds of invalidity, but they all come down to this—that he was a citizen of the United States at the time

of his last entry into this country in April, 1930 and for more than five years thereafter, and that by reason thereof he is not subject to deportation as an alien convicted of a crime of moral turpitude in the year 1932. He claims in addition that he was arbitrarily denied a suspension of deportation in a proceeding "that did not constitute a hearing as required by law."

The Government contends that, although petitioner had been naturalized in 1929, his title to citizenship was annulled and cancelled in 1939 on the ground that it was fraudulently and illegally procured and that the judgment of annulment became effective retrospectively as of the date of the petitioner's unlawful naturalization. It is the Government's position that in fact and in law petitioner was an alien at the time of his entry into this country in April, 1930 and at the time he was convicted of the deportable offense within five years thereafter. No question arises as to petitioner's present status as an alien. The Government denies that petitioner was arbitrarily denied his application for suspension of deportation and that the hearing thereon was conducted otherwise than in accordance with due process.

The pertinent facts are not in dispute. Petitioner, who was a native of Italy, entered this country in 1914. In 1929 he was naturalized as a United States citizen. Shortly thereafter he made a visit to his native country, returning to the United States in April, 1930. In 1932 he was convicted of the crime of perjury in the Common Pleas Court of Cuyahoga County, Ohio and served a period of three years and eight months in the Ohio Penitentiary. In 1939, under favor of Sec. 738 of Title 8 U.S.C., 34 Stat. 601, 603,* the Government commenced an independent action against petitioner to set aside and revoke his title to citizenship. Among the grounds for revocation that were alleged in the Complaint was the averment that—

"Plaintiff further says that the naturalization of said Francesco Brancato was fraudulently and illegally procured on the following grounds: * * *

"(c) Said petition was not verified by the affidavit of two credible witnesses; and; * * *."

When the denaturalization case was called for trial, the Government counsel and petitioner's attorney entered into a stipulation as follows:

"That the attorneys for the respective parties do hereby stipulate that the answer heretofore filed by the defendant on January 13, 1938 be withdrawn and that the allegations of the complaint set forth on page 3 under (c) are admitted to be true without prejudice to the right of the United States to at any time prove against the defendant in any proceedings all other allegations made in said complaint."

Thereafter, on the basis of the facts as admitted by the petitioner, the court entered its order of judgment which in part provides:

"It is the judgment and order of the court that the order of the United States District Court, at Cleveland, Cuyahoga County, Ohio, entered on November 15, 1929, admitting the defendant, Francesco Brancata, to citizenship be and the same is hereby vacated and said order is annulled and certificate of naturalization No. 3200557 issued by virtue of said order is canceled;

"It is further ordered that the said certificate be surrendered to the Clerk of this court and when received by him that same be canceled, and the defendant, Francesco Brancato, is enjoined from setting up or claiming any right or privilege, benefits or advantages whatsoever by virtue of said order entered by the said United States District Court at Cleveland, Ohio, on November 15,

* Now Immigration and Nationality Act, 1952, 8 U.S.C.A. § 1451.

1929, in which said defendant was admitted to citizenship, * * * "

In 1951 deportation proceedings were commenced against petitioner based upon the charge that within five years of his last entry into the United States he committed a crime involving moral turpitude, to wit, perjury. He was ordered deported by the Special Inquiry Officer, whose decision was affirmed by the Immigration Board of Appeals. Thereafter petitioner sought discretionary relief. His application was granted and the order of deportation suspended. The Immigration Bureau then reopened the question of discretionary relief and in a second hearing reversed its former decision, denied the petitioner's application, and directed that the order of deportation be executed.

■■ In his brief petitioner submits no argument in support of his contention that he was arbitrarily denied an order of suspension of deportation. This omission on his part might well be treated as an abandonment of that claim. However, I have examined the record of the hearing and find there is ample evidence to sustain the finding of the Immigration Service that petitioner was not a person of good moral character for the period required by law and therefore not entitled to discretionary relief. I also find that the hearing on petitioner's application for suspension of deportation was conducted in accordance with the requirements of due process.

■ Petitioner's challenge of the order of deportation raises the issue whether the judgment of this court on April 12, 1939 operated retrospectively to divest the petitioner of his colorable title to citizenship as of the date of its unlawful procurement in 1929. The judgment of April 12, 1939 is the best evidence of its own validity. It is not subject to collateral attack and no such attack has been made by petitioner in this proceeding. However, the petitioner contends for an interpretation of the operative words of the judgment that is clearly in opposition to their plain meaning and

effect. The judgment of 1939 "annulled" and "vacated" the judgment or order of 1929 admitting petitioner to citizenship. The word annul is not technical and may be used interchangeably with "vacate". To annul means to declare invalid; to render void. 3 C.J.S. Annuity—Annus, p. 1389. Annulment is the act of making void retrospectively as well as prospectively. 3A Words and Phrases, Annul; Annulment, p. 3. Deihl v. Jones, 170 Tenn. 217, 94 S.W.2d 47, 48. Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 1358, 87 L.Ed. 1796, was an independent action to set aside and cancel a certificate of citizenship on the ground that it had been illegally procured. While the court was divided on other issues in the case, both the concurring and dissenting members of the court were in apparent agreement as to the effect of a judgment annulling an order of naturalization illegally procured. In his concurring opinion in Schneiderman Mr. Justice Rutledge said:

"The effect of cancellation is to nullify the judgment of admission."

Chief Justice Stone, in his dissenting opinion described the nature of an independent action to denaturalize and said:

"Hence the issue before us is whether petitioner, when naturalized, satisfied the statutory requirements. It is the same issue as would be presented by an appeal from a judgment granting or denying naturalization upon the evidence here presented * * *."

■ It is too clear to warrant discussion that a reversal of a judgment of naturalization on appeal by the Government would be effective to nullify the judgment as of the date of its rendition. Where the same issue is presented in an independent proceeding that results in a judgment vacating and nullifying an earlier judgment of naturalization the effect is likewise to nullify the former judgment as of the time it was entered. It is held, therefore, that the judgment of April 12, 1939 is an adjudication that the order of 1929 admitting petitioner to citizenship is void. This determination

is sufficient to deny petitioner the relief he seeks. However, petitioner vigorously contends that it is only where title to citizenship is annulled on the ground of fraud that the judgment of annulment operates retroactively. This contention is unsound. It is settled that a judgment vacating an order admitting an alien to citizenship on the ground that it was illegally procured is effective to nullify the order of admission as of the time it was made. Section 15, Title 8 U.S.C. § 738, under which the action to denaturalize was brought, provided in part:

> "It shall be the duty of the United States district attorneys * * * to institute proceedings in any court specified in subsection (a) of section 701 in the judicial district in which the naturalized citizen may reside * * * for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."

The statute makes no distinction between the effect of setting aside an order of naturalization on the ground of fraud or on the ground of illegal procurement. Nor do the courts make such distinction. It has been held uniformly that where an alien does not comply strictly with the conditions which Congress has made prerequisite to an award of citizenship, the court is without jurisdiction to naturalize the alien.

Section 4 of the Act of 1906, 34 Stat. 596,† provides in part:

> "That an alien may be admitted to become a citizen of the United States in the following manner *and not otherwise*".

The statute specifies the qualifications that an applicant must possess, and states with particularity the requirements that must be complied with as conditions prerequisite to the court's authority to grant the applicant's petition. Included among these requirements is the condition that the petition for naturalization shall be verified by the affidavits of at least two credible witnesses, citizens of the United States, who shall state in their affidavits that they have known the applicant to be a resident of this country for the requisite period of time and that they have personal knowledge that he is a person of good moral character and in their opinion in every way qualified to be a citizen of the United States.

In Johannessen v. United States, 225 U.S. 227, 240, 32 S.Ct. 613, 616, 56 L.Ed. 1066, the Supreme Court specified the duties that must be performed by an alien applying for citizenship and the effect of his failure to strictly conform to the requirements of the statute, in the following language:

> "It is his province, and he is bound, to see that the jurisdictional facts upon which the grant is predicated actually exist, and if they do not he takes nothing by his paper grant. * * *
>
> "An alien has no moral nor constitutional right to retain the privileges of citizenship if, by false evidence or the like, an imposition has been practiced upon the court, without which the certificate of citizenship could not and would not have been issued."

In United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 425, 61 L.Ed. 853, it was held that the statutory requirement that final hearings on petitions for naturalization shall be held entirely in open court was not satisfied by a hearing in the judge's chambers adjoining the court room. In that case part of the hearing had been held in open court and then adjourned to the court's chambers. In holding this to be fatal violation of the statute the court said:

> "An alien who seeks political rights as a member of this nation can rightfully obtain them only up-

† Now Immigration and Nationality Act 1952, 8 U.S.C.A. § 1445.

on terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare."

In United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321, the court held that the filing of a certificate of arrival with the petition for naturalization was an indispensable prerequisite to a valid order of naturalization and vacated an order admitting an alien to citizenship who had failed in the respect noted to comply with the statute.

Maney v. United States, 278 U.S. 17, 23, 49 S.Ct. 15, 16, 73 L.Ed. 156, stands as a constant and sharp reminder of the strictness with which courts must construe the provisions of the statute specifying the preliminary requirements that must be fulfilled as conditions precedent to a valid order of naturalization. There the applicant filed his petition for naturalization on November 13, 1923 but did not at that time file his certificate of arrival. However, the certificate of arrival was mailed to the clerk of the court on December 23, 1923. The naturalization hearing was held on February 11, 1924, at which time the district judge, over the objection of the Government, ordered the certificate filed and attached to the petition *nunc pro tunc* as of the date the petition was filed and then entered a decree admitting the applicant to citizenship. The Supreme Court refused to consider the *nunc pro tunc* order of the district court as the correction of a formal defect but held that the filing of the certificate with the petition "was a condition that attached to the power of the Court." It was the view of Mr. Justice Holmes, speaking for the court in Maney, that compliance with the statutory requirement of filing the certificate with the petition was a jurisdictional fact that could not be supplied by the district judge. In holding the order of naturalization void under the circumstances of that case, Mr. Justice Holmes said:

"As the certificate of citizenship was illegally obtained, the express words of section 15 authorize this proceeding to have it cancelled. The judgment attacked did not make the matter *res judicata,* as against the statutory provision for review. The difference between this and ordinary cases already has been pointed [out] and would be enough to warrant a special treatment. But it hardly can be called special treatment to say that a record that discloses on its face that the judgment transcends the power of the judge may be declared void in the interest of the sovereign who gave to the judge whatever power he had."

The Supreme Court has not had occasion to determine the question whether the requirement that the affidavits of two credible witnesses must be filed with the petition is a condition precedent to the power of the court to enter an order of naturalization. However, this precise question has been decided by several appellate and district courts. In the case of In re Vassall, 47 F.2d 598, 599, the Second Circuit Court of Appeals said that

"The provision of the statute requiring the petition to be verified by at least two 'credible witnesses' is mandatory and must be strictly complied with. United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156."

It was held in Vassall that the failure to comply with the statute deprived the applicant of his right to admission.

In re Verbich, D.C., 1 F.2d 589, holds that under the Naturalization Act of June 29, 1906, which required verification of a naturalization petition by at least two credible witnesses, a petition verified by two witnesses, one of whom was not credible because previously convicted of bootlegging, was fatally defective. In this connection the court said:

"There is no question that, before this court can acquire jurisdiction

to hear a naturalization petition, all of the jurisdictional requirements for the filing of that petition must have been met in complete and exact accord with the requirements of the law."

To the same effect are United States v. Kusche, D.C., 56 F.Supp. 201; In re Kornstein, D.C., 268 F. 172; United States v. Gulliksen, 8 Cir., 244 F. 727; United States v. Martorana, 3 Cir., 171 F. 397.

■■ The Naturalization Act of 1906 was designed to prevent the frauds and to correct the abuses that had so frequently occurred in connection with the naturalization of aliens under prior laws. As shown by the cited cases, the statute which specified the manner—*"and not otherwise"*—in which admission to citizenship may be obtained, must be followed in precise and strict conformity to the Congressional mandate. It has been rightly said that title to citizenship is the "most precious gift" within the power of the United States to award to friendly aliens, and Congress has decreed that it shall be awarded only to those who possess all the requisite qualifications and who, in presenting their petitions, exercise the utmost good faith and comply strictly with all the prescribed requirements constituting the manner in which citizenship may be obtained.

■■ This is a deportation proceeding, and it is the settled policy of the courts in all such cases, particularly in those where the alien has been in this country for many years, to require clear proof of the grounds of deportation. In such cases also the court will construe close and doubtful questions of statutory construction most favorably to the alien. Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433. But here there is no question as to the adequacy of proof and none relating to the construction of ambiguous terms of a statute. It appears on the face of the record by a stipulation binding upon the petitioner that he did not file affidavits of two credible witnesses, as mandatorily required by the statute. By his own admission, one or both of his witnesses were unworthy of belief. This non-compliance with the statute, is fatal to the validity of his admission to citizenship which this court by its judgment of April 19, 1939 rightly annulled and vacated. Petitioner was not a citizen in 1930. He did not enjoy that status in 1932. He has never been a citizen of the United States. He entered this country as an alien in 1930 and committed the serious crime of perjury within five years thereafter. Upon these facts and upon the authorities cited above, the order of deportation must be sustained.

United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 70 S.Ct. 329, 334, 94 L.Ed. 307, is additional authority sustaining the deportation of the petitioner here. In Eichenlaub it was held that the statute there applicable did not require that alien offenders must have the status of aliens at the time of their convictions of violating the Espionage Conspiracy Act of 1917, 40 Stat. 217. The court reasoned that the statute did not intend to preclude the Government from deporting alien offenders merely because they were convicted at times when they held certificates of naturalization, later cancelled for fraud. The court observed that to give the statute such effect "would permit the denaturalized aliens to set up a canceled fraudulent status as a defense, and successfully to claim benefits and advantages under it." No good reason appears why under similar circumstances the principle of the Eichenlaub case is not applicable in cases involving deportation of aliens who illegally procured their certificates of naturalization as well as those who procured their certificates by fraud. As noted above, in its judgment of April 12, 1939 this court enjoined the petitioner from claiming any benefits under the invalid order of naturalization of 1929.

Petitioner's application for writ of habeas corpus is denied.