UNITED STATES of America ex rel.
Francesco BRANCATO,
Appellant,

v.

John M. LEHMANN, Officer in Charge,
Immigration & Naturalization
Service, Appellee.

No. 12759.

United States Court of Appeals
Sixth Circuit.

Nov. 21, 1956.

Martin, Circuit Judge, dissented.

———◆———

Henry C. Lavine, Cleveland, Ohio, for appellant.

Eben H. Cockley, Cleveland, Ohio, Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief, for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

This is an appeal from an order of the District Judge dismissing appellant's application for a Writ of Habeas Corpus.

The material facts are not in dispute. Appellant who was a native of Italy and is now approximately sixty years old, entered this country in 1914. He was naturalized in the District Court at Cleveland, Ohio on November 15, 1929. He married a United States native born citizen who died in September 1955. He has five children and twelve grandchildren, all native born and living in Cleveland. On November 29, 1929 he departed from the United States for a visit to Italy. He returned to the United States on March 1, 1930.

On June 2, 1932 appellant was convicted of perjury in the Common Pleas Court of Cuyahoga County, Ohio and served a sentence in the Ohio State Penitentiary until December 1, 1936.

In 1937 an action was filed by the United States in the Federal Court for the Northern District of Ohio seeking to cancel the naturalization of appellant on the ground that his petition for naturalization was not verified by the affidavits of two credible witnesses, as required by the Nationality Act of June 29, 1906, 34 Stat. 596.[1] Appellant filed an answer denying the allegation but later entered into a stipulation with the United States Attorney under which the answer was withdrawn and the allegation admitted. On April 12, 1939 the Court entered a judgment that the order of November 15, 1929 admitting the appellant to citizenship "be and the same is hereby vacated and said order is annulled and certificate of naturalization No. 320057 issued by virtue of said order is cancelled." The judgment further provided that the appellant be enjoined from setting up or claiming any right or privilege whatsoever by virtue of the order of November 15, 1929 which admitted him to citizenship.

In 1951 deportation proceedings were commenced against appellant under Sec. 19 of the Immigration Act of February 5, 1917 as amended,[2] based upon the ground that within five years of his last entry into the United States he committed a crime involving moral turpitude, to wit, perjury. Sec. 19 provided: " * * * except as hereinafter provided, any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, * * * shall, upon the warrant of the Attorney General, be taken into custody and deported." The appellant was found subject to deportation and ordered deported. The validity of the order is challenged by the application for the Writ of Habeas Corpus.

The Government contends that the denaturalization order of April 12, 1939 annulled and cancelled appellant's citizenship ab initio; that accordingly he was an alien and not a citizen when he returned from his trip to Italy and re-

1. Now 8 U.S.C.A. § 1445.

2. Now 8 U.S.C.A. § 1251.

entered the United States in 1930; that having entered as an alien in 1930 and having been convicted of perjury in 1932, within the five year period after entry, he was deportable. There seems to be no dispute between the parties that the Immigration Act includes the entry of an alien into the United States whether such entry be the first or any subsequent one. United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L. Ed. 1298; Zurbrick v. Woodhead, 6 Cir., 90 F.2d 991.

■■ Appellant does not contest the validity of the judgment of denaturalization. But he contends that the judgment was entered because his naturalization was illegally procured rather than fraudulently procured, and that an annulment operates retroactively only in cases of fraudulent procurement. Conceding that the judgment is not based upon fraud, we agree with the ruling of the District Judge that the statute under which the action was brought, Sec. 738, Title 8 U.S.Code,[3] makes no distinction between the effect of setting aside an order of naturalization on the ground of fraud or on the ground of illegal procurement, and that the judgment of April 12, 1939 nullified appellant's naturalization as of the date of its rendition. It is settled law that the failure of an alien to comply strictly with the conditions which Congress has made prerequisite to an award of citizenship deprives the Court of jurisdiction to naturalize the alien. Johannessen v. United States, 225 U.S. 227, 240, 32 S.Ct. 613, 56 L.Ed. 1066; United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321; Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156. The rule has been applied to cases where there was a failure to have the petition verified by two credible witnesses. In re Vassall, 2 Cir., 47 F.2d 598; In re Verbich, D.C.Colo., 1 F.2d 589.

Basing his ruling upon the foregoing principles, the District Judge held that the appellant did not become a citizen in 1929; accordingly he was not a citizen when he reentered the United States in 1930; and since he reentered when he was an alien the statute was applicable to him and the order of deportation should be sustained. The application for the Writ was denied. United States ex rel. Brancato v. Lehmann, D.C., 136 F.Supp. 322.

■ The fact that it was decided in 1939 that the appellant was legally an alien in 1930 when he reentered the United States after his visit to Italy, is in our opinion, not decisive of the case. There still remains the question whether such reentry was an "entry" within the meaning of the statute. "While it is true that statutory language should be interpreted whenever possible according to common usage, some terms acquire a special technical meaning by a process of judicial construction. So it is with the word 'entry' as used in sec. 19(a) of the Act of 1917." Savoretti v. United States ex rel. Pincus, 5 Cir., 214 F.2d 314, 316. The word has become a word of art. Gonzales v. Barber, 9 Cir., 207 F.2d 398, 402, affirmed 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009; Mangaoang v. Boyd, 9 Cir., 205 F.2d 553, 556–557, certiorari denied 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384.

It is clear from the decisions that the word "entry" in the statute means more than the technical physical act of coming into the geographical territory of the United States. This Court pointed out in Thack v. Zurbrick, 6 Cir., 51 F.2d 634, 635, that the statutory entry was not "completed by that technical entry which occurs when the international line is crossed." The Supreme Court said in United States ex rel. Claussen v. Day, 279 U.S. 398, 401, 49 S.Ct. 354, 355, 73 L.Ed. 758, "There is no such entry where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port

3. Now 8 U.S.C.A. § 1451.

of this country without having been in any foreign port or place." In Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 11, 92 L.Ed. 17, the Court held that where a Mexican citizen who made legal entry into this country in 1923 and shipped out of Los Angeles on an intercoastal voyage to New York City as a member of the crew of an American merchant ship which was torpedoed, was rescued, taken to Cuba and returned to the United States through Miami, Florida, it was not "the entry of the alien to the United States" within the meaning of the Act. For other examples see: Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878; Yukio Chai v. Bonham, 9 Cir., 165 F.2d 207; Savoretti v. United States ex rel. Pincus, supra, 5 Cir., 214 F.2d 314; Thack v. Zurbrick, supra, 6 Cir., 51 F.2d 634; Carmichael v. Delaney, 9 Cir., 170 F.2d 239, 242–243.

■ The statute, with respect to its application to this case, should be construed in accordance with its purpose. Fong Haw Tan v. Phelan, 333 U. S. 6, 9–10, 68 S.Ct. 374, 92 L.Ed. 433. Its purpose obviously was to deport those entering as aliens who, by their conduct after entry, proved themselves to be undesirable residents. It was not applicable to United States citizens reentering this country after a trip abroad. Appellant was reentering the United States as a citizen, not as an alien, and at that time he could not have been denied entry on the ground of alienage. Frausto v. Brownell, D.C., 140 F.Supp. 660, 662, 664. To hold that appellant should now be treated as an alien when he reentered this coutry in 1930 as an American citizen, with a legally issued passport, and properly exercising the rights of an American citizen in doing so, is a legal fiction which is in direct conflict with the actualities of the situation. We find nothing in the statute to indicate such an all-inclusive purpose. On the contrary, we think that the reasonable and normal interpretation of the statute is that it referred to an entry by one who had not theretofore acquired the status of a naturalized citizen, and

was entering this country for the purpose of living here and possibly becoming a citizen later. In keeping with the purpose of the statute, we think it should be construed as applying to those who enter as aliens, and not as including those who reenter this country on the basis of their citizenship even though that citizenship may be lost at a later time.

■ Although it is not penal in character and not subject to the constitutional inhibition against the passage of an ex post facto law, Mahler v. Eby, 264 U.S. 32, 39, 44 S.Ct. 283, 68 L.Ed. 549, deportation is a drastic measure, at times the equivalent of banishment or exile, for which reason deportation statutes should be given the narrowest of the several possible meanings. Fong Haw Tan v. Phelan, supra, 333 U.S. 6, 10, 68 S.Ct. 374; Barber v. Gonzales, 347 U.S. 637, 642–643, 74 S.Ct. 822, 98 L.Ed. 1009.

The Government's contention would require that we give the statute a relation-back construction. We have no difficulty in giving a retroactive effect to the denaturalization order in view of the authorities supporting such a ruling. But the Government has cited us no case from the Supreme Court or the U. S. Courts of Appeals which has gone the additional step and given such relation-back construction to the deportation statute. It was urged upon the Supreme Court in United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 529, 70 S.Ct. 329, 94 L.Ed. 307, where the Court found that a ruling on the question was unnecessary for a disposition of the case. We think that the Court's later ruling in Barber v. Gonzales, supra, 347 U.S. 637, 642, 74 S.Ct. 822, 98 L.Ed. 1009, indicates disapproval of a relation-back construction.

The ruling ordering deportation in United States ex rel. Eichenlaub v. Shaughnessy, supra, was based upon the statute of May 10, 1920, 8 U.S.C.A. § 157, which was a special statute dealing with sabotage and espionage during the first World War and applicable to

some 650 aliens then in custody. We do not believe that the construction given to the different wording of that statute is applicable to the general deportation statute which we are now considering.

The judgment is reversed and the case remanded with instructions to enter a judgment sustaining the application for the Writ and releasing the appellant from custody.

MARTIN, Circuit Judge (dissenting).

I would affirm the judgment of the district court, denying the application for writ of habeas corpus, for the reasons stated in the well-reasoned and logical opinion of United States District Judge McNamee, D.C.N.D.Ohio, 136 F. Supp. 322, wherein he demonstrates to my satisfaction the legality of the deportation order.