**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alexander Manuel MALLIDES,
Defendant-Appellant.**

**No. PC 71–2571.**

United States District Court,
S. D. California.

March 1, 1972.

**2**

Harry D. Steward, U. S. Atty., Lyn I. Goldberg, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

J. David Franklin, San Diego, Cal., for defendant-appellant.

## DECISION

GORDON THOMPSON, Jr., District Judge.

This is an appeal from a judgment of the United States Magistrate's Court for the Southern District of California adjudging appellant to be guilty as charged in a complaint alleging violation of 18 U.S.C. § 2 and 8 U.S.C. § 1325. Prior to trial appellant signed a consent to be tried by the United States Magistrate.

The jurisdiction of the Magistrate's Court was based upon Rules 1 and 3 of the Rules of Procedure for the Trial of Minor Offenses before United States Magistrates. Jurisdiction of this Court rests upon Rules 8 and 11 of those Rules.

The appellant was charged with aiding and assisting the entry of three named and two unnamed aliens in that he did pick up and transport said aliens from San Diego to Oceanside, en route to Los Angeles, when he was apprehended by officers of the Oceanside Police Department, and that he had reason to believe that said aliens were in the United States contrary to law.

The Court found the appellant guilty as charged following a trial without a jury. The appellant was committed to the custody of the Attorney General for a period of 15 days pursuant to 18 U.S. C. § 4082.

The appellant specifies three errors on appeal: 1) that he was unlawfully detained by state law enforcement officers; (2) that evidence seized as a result of that unlawful detention should have been suppressed; 3) assuming that the defendant had knowledge that the persons he had transported were unlawfully in the country, the undisputed facts of the case do not show that appellant aided or assisted the illegal entry.

The lawfulness of the detention must be determined with reference to state law. United States v. Di Re, 332

U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Wartson v. United States, 400 F.2d 25 (9th Cir.1968). The state standards must comport with federal constitutional standards as articulated in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968): "[W]ould the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

■ Relying upon that standard, the California courts have developed a three-fold test for judging the reasonableness of detentions. To justify a temporary detention there must be (1) a rational suspicion by the peace officer that some activity out of the ordinary is or has taken place; (2) some indication to connect the person under suspicion with the unusual activity, and (3) some suggestion that the activity is related to crime. Irwin v. Superior Court, 1 Cal. 3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969); People v. Henze, 253 Cal.App. 2d 986, 61 Cal.Rptr. 545 (1967).

That test does not differ materially from that currently in use in the Ninth Circuit.

We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. [Citations omitted]. A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.

Wilson v. Porter, 361 F.2d 412, 415 (9th Cir.1966).

The factors presented to the trial court upon which the detention was based were the following: The appellant's car was spotted in an isolated area. The arresting officers had never seen cars in that location at that time before. There had been numerous thefts in the area. The occupants of the vehicle appeared to be "six Mexican-appearing males." The occupants of the car were sitting in what the officers described as a rigid position, one that they had never seen before. Their eyes were straight ahead, they did not turn to look at the police car as it passed them, and the occupants were all completely motionless. The arresting officer had two years of experience, including from 20– to–30 arrests on alien charges in the Oceanside area.

Based upon these factors, it does not appear that this detention constituted a constitutional violation under the standards in *Terry, Wilson,* or the California cases. In the words of the *Terry* decision, the officers in this case could point to specific and articulable facts which taken together with rational inferences reasonably warranted a detention. The facts known to the officer were such as to warrant a man of reasonable caution in the belief that the action in detaining the vehicle was appropriate. As stated in *Wilson,* it appears that the facts within the knowledge of the detaining officers did create a "founded suspicion," and it does not appear that the detention was arbitrary or harassing.

■ Accordingly, it is the conclusion of this Court that the trial court correctly determined that the detention was valid. Since the detention was valid, it is not necessary to discuss the second issue advanced by appellant in this appeal.

We move next to the third issue raised by appellant. He argues that the act of providing transportation for an

alien illegally in the country, knowing that the alien is illegally in the country, from downtown San Diego to Oceanside, California, does not constitute the crime of aiding and abetting the entry of said aliens into the United States as charged in the complaint.

There are two different theories by which it can be said that the appellant aided and assisted the illegal entry. First, if the entry of the aliens into the United States had not been completed at the time that the appellant transported them from San Diego to Oceanside, with knowledge that they were illegally in the country, then the act of transporting them can be said to have aided and assisted the entry. Second, if the appellant was part of the entire scheme to smuggle aliens into this country, his role being to transport them from San Diego to Los Angeles, then again it can be held that appellant aided and assisted in the unlawful entry.

■ As to the first theory, the circumstantial evidence in the record is sufficient to allow the fact-finder to have concluded beyond a reasonable doubt that the appellant knew the aliens were illegally in the country at the time that he began to transport them in San Diego. Consequently, if the entry had not yet been completed at that time, the conviction should stand.

The word "entry" is defined in 8 U.S. C. § 1101(a) (13) to mean "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise . . . . "

■ This definition has not always proven adequate. The issue presented here is how or when the entry has been completed. "While it is true that statutory language should be interpreted whenever possible according to common usage, some terms acquire a special technical meaning by a process of judicial construction." Savoretti v. United States ex rel. Pincus, 214 F.2d 314, 316 (5th Cir.1954). The word "entry" has become a word of art. United States ex rel. Brancato v. Lehmann, 239 F.2d 663, 665 (6th Cir.1956), and cases cited therein. "Entry" means more than the technical physical act of coming into the geographical territory of the United States, United States ex rel. Brancato v. Lehmann, *supra,* and more than merely crossing the international boundary line. Thack v. Zurbrick, 51 F.2d 634, 635 (6th Cir.1931).[1]

■■ Bearing in mind the rule that penal statutes are to be strictly construed, McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1930), by applying the definitions of "entry" set forth above, it is this Court's conclusion that the entry had been accomplished prior to the time that the appellant met the aliens. Consequently, the conviction cannot be sustained under this theory.

The conviction is proper, however, if the evidence at the trial was sufficient to allow the fact-finder to conclude that the appellant was part and parcel to a plan to aid and assist the entry of aliens into this country, his duty being to await the arrival of the aliens in San Diego and then transport them further into the interior. A review of the transcript of the trial indicates that there is sufficient circumstantial evidence to allow the inference that the appellant met the aliens by prearrangement, knowing that they had illegally entered the country.

There was evidence that appellant had air shocks on his car. Air shocks are used where heavy loads are intended. Appellant took the witness stand and stated that he purchased the air shocks because he was thinking of going to

1. In circumstances not here relevant, freedom from official restraint may be added to physical presence before entry is accomplished. United States v. Vasilatos, 209 F.2d 195, 197 (3rd Cir. 1954).

New York. He spent the money even though he was not certain he would be making the trip and even though he was in poor financial condition. The trial court could reasonably have disbelieved appellant's testimony regarding the air shocks. The court could have determined by inference that the air shocks were on the car because appellant had made prior arrangements with someone to transport the aliens.

Other discrepancies in the appellant's story existed which support the fact-finder's decision. The appellant testified that he was in the area of 12th and Market because he once owned a business there, and that he had gone into a restaurant nearby. But he parked his car on a street some distance away from the restaurant, right next to the house where the aliens were awaiting transportation.

Additionally, there are discrepancies as to how the appellant was to receive his money. At one point he testified that the man who approached him on the street offered to pay him $20.00 per person to take the five persons to Los Angeles. He later testified that he was told that he would be paid by the five individuals after they arrived in Los Angeles. He also testified that he would have taken the aliens to Los Angeles even if he did not get paid, thus contradicting his previous testimony that the reason he accepted the proposition was for the money. However, the alien witnesses testified that they were supposed to pay the driver of the car $200.00 a piece when they arrived in Los Angeles.

In short, there was more than ample reason to discredit the testimony of the appellant, and more that sufficient circumstantial evidence to support the inference that the appellant was part of the plan to bring aliens into this country and transport them into the interior.

Accordingly, the conviction is affirmed.