**TUILEFANO VAELA`A, as CHAIRMAN of the
IMMIGRATION BOARD, Plaintiff**

**v.**

**TAUESE P. SUNIA, GOVERNOR OF AMERICAN SAMOA,
TOETOGATA ALBERT MAILO, ATTORNEY GENERAL,
ROBERT PORTER, ACTING CHIEF IMMIGRATION OFFICER,
ELVIS PATEA, ASSISTANT ATTORNEY GENERAL, Defendants**

High Court of American Samoa
Trial Division

CA No. 68-97

November 3, 1997

Before RICHMOND, Associate Justice, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala`ilima
For Defendants, Henry W. Kappel, Assistant Attorney
General

OPINION AND ORDER

On July 21, 1997, the court denied defendants' motion to dismiss and issued a preliminary injunction in this action. We also applied T.C.R.C.P. Rule 65(a)(2), rendering evidence received during the hearing on the application for a preliminary injunction admissible at the trial on the merits as part of the trial record without repetition. The trial came regularly before the court on September 5, 1997, with both counsel present, and the parties stipulated to additional facts in lieu of further testimony. At the parties' request, the court set up and the parties complied with a schedule ending October 1, 1997 for submission of written final arguments.

### Discussion

■ We predicated the preliminary injunction in major part on our conclusion that the amnesty program initiated by defendant Tauese P. Sunia, in his official capacity as the Governor of American Samoa ("the Governor"), to legitimate the immigration status of undocumented aliens[1] was not authorized, even though it must be, by the Legislature of American Samoa, and that the Governor's reliance on his pardoning power under Article IV, Section 9 of the Revised Constitution of American Samoa was not legally sustainable. *See Tuilefano v. Tauese,* 1 A.S.R.3d 88, 92-94 (Trial Div. 1997). The governor's constitutional pardoning power is expressly limited to pardons, even if that term is broadly construed to include amnesty grants, bestowed after convictions for criminal offenses. We further concluded that even when the governor properly applies his pardoning power, the grantee's immigration status must still be approved in compliance with the immigration laws of American Samoa. *Id.*

On September 26, 1997, the Legislature enacted House Bill No. 25-81 in the wake of the preliminary injunction. The Legislature passed this bill as an emergency measure, and under Article II, Section 19 of the Revised Constitution of American Samoa, it became effective immediately upon the governor's approval. The Governor signed this measure into law as

---

[1] We use the term "undocumented aliens" in this opinion and order to mean aliens who have reached the borders of American Samoa but have not been authorized to remain as residents in American Samoa, pursuant to the immigration laws, A.S.C.A. §§ 41.0201-41.0709, and administrative rules, A.S.A.C. §§ 41.0201-41.1008.

135

Public Law No. 25-16 on October 2, 1997. This law amended the numerical limitations on annual alien registrations to permit up to 2,391 additional registrations, available for issuance only in fiscal year 1997, to aliens of several nationalities. A.S.C.A. § 41.0301(f) (1997).[2] Aliens whose applications for authorizations to remain as residents in American Samoa were processed between January 3 and April 23, 1997 are granted waivers of the usual requirement of return to their native country of origin until they are allocated alien registration receipt cards for re-entry into American Samoa and of the 60-day original entry limitation, pending the immigration board's decision on their applications. *Id.* About 2,391 applications for authorizations to remain were processed under the Governor's amnesty program during this period. This law also prevents qualifying applicants from using their presence in American Samoa before receiving the immigration board's approval for purposes of attaining the continuous residency requirement for permanent resident status. A.S.C.A. § 41.0301(g) (1997).

Public Law No. 25-16 does not authorize the governor to grant amnesty or residency status to undocumented aliens. It merely increases the numerical limitations for certain nationalities for a specific time period and thus removes that obstacle to the legitimation of the immigration status of the aliens who were processed under the Governor's amnesty program. It also allows them to physically remain here pending the immigration board's determination of their immigration status. Other aliens may benefit from the quota increases.

 We believe that our original analysis of the governor's amnesty authority is correct, *see Tuilefano v. Tauese*, 1 A.S.R.3d 88, 92-94 (Trial Div. 1997), and need not be restated here. Hence, we will now declare that the Governor was, and still is, without authority to grant amnesty to undocumented aliens under his constitutional pardoning power or by other means. The governor can be empowered with that authority only by constitutional amendment or by legislative enactment.

Because the parties did not thoroughly address the issue at the hearing on the preliminary injunction application, we did not fully discuss the related question concerning the power to issue authorizations to remain to undocumented aliens in the preliminary injunction order. The issue is important, because defendant Toetogata Albert Mailo, in his official capacity as the Attorney General of American Samoa ("the Attorney

---

[2] The breakdown by nationality is "1,820 for aliens born in Western Samoa, 404 for aliens born in the Kingdom of Tonga, 88 for aliens born in the Republic of the Philippines, 20 for aliens born on Tuvalu, 14 for aliens born in the Republic of Fiji, 14 for aliens born in the People's Republic of China, 12 for aliens born in New Zealand, 11 for aliens born in the Republic of Korea, and 8 for aliens born in the Republic of China."

General") and his designees, including the other defendants, Assistant Attorney General Elvis Patea and Acting Chief Immigration Officer Robert Porter, processed the applications of the undocumented aliens granted amnesty by the Governor.

The parties stipulated at the trial to certain uncontradicted material facts without calling witnesses. First, as a matter of procedure, the immigration board hears and determines initial applications by aliens for authorization to enter and remain in American Samoa, and the attorney general, or his designee, reviews and determines renewals of those authorizations. Second, most of the undocumented aliens granted amnesty had never received authorizations to remain in American Samoa, while others had expired initial authorizations. With that stipulation, we are now prepared to definitively take up this authorization issue.

Plaintiff Tuilefano Vaela`a, in his official capacity as the Chairman of the Immigration Board, essentially maintains that the immigration board must approve original applications to remain, and that any ambiguity in the applicable immigration laws and administrative rules is resolved by following this established practice. Defendants counter, advocating that while the immigration board determines original entries, the undocumented aliens granted amnesty were authorized to remain under the attorney general's delegated role of adjusting the status of persons already here. We think that defendants, using the undocumented aliens' physical presence in American Samoa, are making a fanciful distinction between entering and remaining in American Samoa.

The immigration board has statutory authority to:

> (1) hold hearings concerning the status or exclusion of any person other than American Samoans, their spouses and their children, seeking permission to enter or remain in American Samoa; and shall review appeals of decisions of the attorney general and the immigration division;
> (2) deport any alien after the alien has been accorded an opportunity for a public hearing; . . .
> (7) make rules and regulations necessary for the enforcement of this title; . . .
> (11) delegate any of its administrative duties to the attorney general or immigration officers of American Samoa;
> (12) require the registration of all aliens residing in American Samoa . . . .

A.S.C.A. § 41.0206. The board also has statutory criteria to apply to cases in which the exclusion or deportation of aliens is at issue. *See* A.S.C.A. §§ 41.0401, 41.0615, 41.0616. Clearly, the board has original jurisdiction over any alien's immigration status in American Samoa. Likewise, the

137

board can delegate its administrative duties to the attorney general or immigration officers.

The attorney general is statutorily

> charged with the administration and enforcement of [the laws] relating to the entrance, immigration, registration, and status of aliens, except insofar as [the] laws relate to the powers, functions, and duties conferred upon the [immigration] board.

A.S.C.A. § 41.0206. Section 41.0206 also enunciates the attorney general's authority to render binding legal opinions, enumerates his various administrative functions, and requires him to guard the borders against illegally entering aliens.

The immigration board has broadly delegated, by administrative rule adopted under the rule making provisions of the Administrative Procedures Act, A.S.C.A. § 4.1001-4.1020, its administrative duties to the attorney general and immigration officers selected by him. A.S.A.C. § 41.0302.[3] Defendants also point out that under the rules, the board has included "adjustment of status cases" within its appellate jurisdiction, A.S.A.C. § 41.0303(5), rather than its original jurisdiction. A.S.A.C. § 41.0304.

The term "administrative duties" is not free of ambiguity in the context of the immigration laws, especially when considered in the light of the immigration administrative rules. It could be understood as directed to the immigration board's clerical and other administrative support requirements. We have no doubt that it includes this meaning, as the board is not separately funded in the annual appropriations acts and is without clerical staff, *see e.g.* Public Law No. 25-13 for fiscal year 1998, except as provided by the attorney general and the immigration office.

---

[3] Administrative rules properly promulgated in this manner have the force and effect of law. A.S.C.A. § 1.0201(3); *Bryant v. Southwest Marine of Samoa, Inc.*, 23 A.S.R.2d 55, 56-57 (Trial Div. 1992). Agencies or officials of the Executive Branch of the American Samoa Government have the duty to promulgate administrative rules pursuant to constitutional or legislated authorization, usually to implement regulatory statutes, *see* A.S.C.A. § 4.1002, but they frequently overlook or ignore the requirements of the Administrative Procedures Act when they take on legislated duties. Moreover, the Lieutenant Governor is responsible for publishing and updating at least biennially the administrative rules. A.S.C.A. § 4.1003. Public information and compliance is promoted by publication. However, the last published supplement to the existing to the American Samoa Administrative Code was for the administrative rules adopted during calendar year 1989.

■ The term could also have a broader meaning to include all or some part of the immigration board's decision making authority on status and other issues under the immigration laws. Given the expansive nature of the immigration administrative rules, we think that the board intended to give the attorney general authority to make original decisions on the immigration issues listed in A.S.C.A. § 41.0303. However, assuming that § 41.0303 literally or implicitly encompasses initial authorizations to remain, the board remains ultimately responsible under A.S.C.A. § 41.0205(1) for the attorney general's decisions in these matters.

■ Constitutional statutory authority is always paramount to administrative rule authority. *American Samoa Gov't v. Falefatu*, 17 A.S.R.2d 114, 120 (Trial Div. 1990). The board did not lose either its authority to make or responsibility for consummated decisions to grant first authorizations to remain simply by delegating any such power to the attorney general. *See* A.S.C.A. § 4.0131. A principal can always exercise given authority, whether or not an agent also has delegated authority for the same act. Furthermore, the board in fact processes and decides applications for initial authorizations to remain by long-standing and well-understood procedure. Arguably, by this practice, the board has actually rescinded any authority given in the administrative rules to the attorney general on this particular immigration issue. Certainly, however, the board's power has not been superseded by any delegated authority.

Defendants seek to convince the court that because the undocumented aliens granted amnesty are physically present in American Samoa, the process of issuing authorizations to remain is converted from an authorization to remain at the time of entry to an authorization to remain by adjustment of status after entry. The phrase "adjustment of status" is not defined in either the immigration laws or administrative rules, and is used only in A.S.A.C. § 41.0303(5). However, even if immigration status is literally adjusted, initial authorizations to remain as residents conceptually coincide with original entry, whether or not the alien is physically present in American Samoa. *United States v. Kavazanjian*, 623 F.2d 730, 736 (1st Cir. 1980) ("Most courts that have construed this term have concluded that 'entry' is not accomplished until physical presence of an alien in this country is accompanied by freedom from official restraint."); *United States v. Mallides*, 339 F. Supp. 1, 4 (S.D. Cal. 1972) ("'Entry means more than the technical physical act of coming into the territory of the United States . . . ."), *rev'd on other grounds*, 473 F.2d 859 (9th Cir. 1973); *United States ex rel. Brancato v. Lehmann*, 239 F.2d 663, 665 (6th Cir. 1956) ("It is clear from the decisions that the word 'entry' in the statute means more than the technical physical act of coming into the geographical territory of the United States."). For this reason, aliens approved for resident status are normally required to return to their homelands while waiting for allocation of their alien registrations under the quota system. A.S.C.A. § 41.0301(e). The argument based on the

139

physical presence of the undocumented aliens granted amnesty is *without substance.*

Accordingly, we conclude that the Attorney General and his designees were acting outside their legitimate authority when they processed authorizations to permit the undocumented aliens granted amnesty to remain in American Samoa as residents.[4] Essentially, they ignored the immigration board to accommodate the Governor's legally ineffective amnesty directive.

## Order

### A. Declaratory Relief

We declare that:

█ 1. The Governor was, and still is, without authority to grant amnesty to undocumented aliens, who *have not been convicted of any criminal* offense related to their illegal presence in American Samoa, in the absence of an effective constitutional amendment or legislation authorizing the governor to grant amnesty to undocumented aliens.

2. The Attorney General and his designees acted in excess of their legitimate authority in processing authorizations to remain to undocumented aliens granted amnesty under the Governor's amnesty program, without the immigration board's prior approval.

3. Each of the undocumented aliens granted amnesty under the Governor's amnesty program is illegally present in American Samoa until and unless the immigration board approves the issuance to him or her of an initial authorization to remain as a resident of American Samoa. Each of these undocumented aliens may remain in American Samoa, pending the immigration board's decision on his or her application for authorization to remain, pursuant to A.S.C.A. § 41.0301(f). However, each of these undocumented aliens *is excludable and deportable in the event the* immigration board denies his or her application for authorization to remain, or at any time upon other applicable grounds for exclusion and deportation.

### B. Injunctive Relief

We permanently enjoin:

---

[4] The Attorney General and his designees also ran afoul of the numerical limitation or quota system prescribed A.S.C.A. § 41.0301. The Legislature only later granted temporary relief from those limitations, under the immigration board's guidance, by Public Law No. 25-16.

1. The Governor, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from granting amnesty to undocumented aliens, who have not been convicted of any criminal offense related to their illegal presence in American Samoa, in the absence of constitutional amendment or legislation effectively empowering the governor with that authority.

2. Each defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any defendant from issuing an authorization to remain and an alien registration to any of the undocumented aliens granted amnesty under the Governor's amnesty program until and unless the immigration board approves the issuance of an authorization to remain as a resident of American Samoa to that undocumented alien.

It is so Ordered.