**MANGAOANG v. BOYD, District Director, Immigration and Naturalization Service et al.**

No. 13537.

United States Court of Appeals Ninth Circuit.

June 17, 1953.

See also 9 Cir., 186 F.2d 191.

John Caughlan and Siegfried Hesse, Seattle, Wash., C. T. Hatten, Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty., and John W. Keane, Immigration & Naturalization Service, Seattle, Wash., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant was arrested on a warrant of deportation and after a hearing ordered deported from the United States upon the ground that he was after entering the United States an alien who was a member of the Communist Party of the United States and hence deportable under the provisions of the Internal Security Act of 1950, Pub.Law 831, Ch. 1024, 81st Cong., 2d Sess., U.S.Code Cong. Service 1950, p. 984. The order was affirmed by the Board of Immigration Appeals and appellant sought a writ of habeas corpus in the court below. The appeal is from the judgment denying the writ.

■ Appellant was born of Filipino parentage in the Philippine Islands on February 22, 1902. He came to the continental United States for permanent residence April 29, 1926, and has lived in the United States continuously since that day. At the time of his arrival in this country he was not an alien, but was a national of the United States. Cabebe v. Acheson, 9 Cir., 183 F.2d 795. The Philippine Independence Act, enacted March 24, 1934, 48 U.S.C.A. § 1231, which became effective May 14, 1935, provided that: "(1) For the purposes of Chapter 6 of Title 8 [except § 213(c) (not pertinent here)], this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens * * *" § 8(a) (1), 48 Stat. 462. See Del Guercio v. Gabot, 9 Cir., 161 F.2d 559. The order for appellant's deportation contained the finding, not challenged here, that appellant "was a member of the Communist Party from about February, 1938, to about December, 1939."

§ 22 of the Internal Security Act of 1950 contains the provisions under which the deportation was ordered. That section, amending the Act of October 16, 1918, as amended,[1] provided as follows: "§ 4(a) Any alien who was at the time of entering the United States, or has been at any time thereafter, * * * a member of any one of the classes of aliens enumerated in section 1(2) of this Act, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States." § 1(2) of the Act refers to: "(2) Aliens who, at any time, shall be or shall have been members of any of the following classes: * * * (C) Aliens who are members of * * * the Communist Party of the United States".

■ Appellant asserts that he is not now an alien, but that he always has been and remains a national of the United States. It is clear that to maintain this position he must demonstrate that the rule of Cabebe v. Acheson, supra, does not apply to him. In that case this court held that upon proclamation of Philippine Independence on July 4, 1946, Filipino nationals of the United States lost the status of nationality whether they were then inhabitants of the Islands or domiciled in the United States. We said, 183 F.2d at page 801: "The status of United States nationality for Filipinos was the direct result of the United States' assumption of sovereignty over the Islands. When the United States relinquished its sovereignty, there remained no basis for such status."

Appellant argues that since Cabebe was domiciled in Hawaii and not in continental United States, the rule of that case should not be applied to him. Further he challenges the correctness of the decision in the Cabebe case and seeks to have us reexamine it. We think that it was rightly decided and that under its rule the appellant became an alien on July 4, 1946.

---

[1] 40 Stat. 1012, 41 Stat. 1008, 54 Stat. 673. The section amended was 8 U.S. C.A. § 137 prior to its repeal on June 27, 1952, 66 Stat. 279.

Appellant next says that even if he has been an alien since 1946, he was not an alien but a national of the United States prior to that time and particularly in the years 1938 and 1939 when he was a member of the Communist Party. He says that in order to be a member of the class enumerated in § 1(2) (C), quoted above, he must have been simultaneously (a) an alien and (b) a member of the Communist Party.

The trial court declined to go along with this last contention of the appellant, holding that it was not necessary that appellant "have been an alien at the time he was a member of the Communist Party in order to come within the provisions of § 22 of the Internal Security Act of 1950". The trial court was of the view that this conclusion was compelled by the decision in Eichenlaub v. Shaughnessy, 338 U.S. 521, 70 S.Ct. 329, 332, 94 L.Ed. 307.

We do not think that the Eichenlaub case controls here for the reason that the statutory language there construed read quite differently than does the present act. In that case the class of persons was described as " 'All aliens who *since August 1, 1914,* have been or may hereafter be convicted of any violation or conspiracy to violate any of the following Acts * * *.' " 8 U.S. C.A. § 157. (Emphasis ours.) The Supreme Court held that this language did not require a showing that at the time of the conviction under any such act the person in question had then been an alien. It is obvious that this construction was required since the only limitation upon the time of conviction was that it be " 'since August 1, 1914' ". We think that the language here under consideration, namely, "Aliens who *are* members of * * * the Communist Party", (emphasis ours) was intended to refer to persons who are at the same time both aliens and members of the Communist Party. We think it was not sufficient to prove that the appellant was an alien at the time of his arrest and that he was a member of the Communist Party at some prior date on which he was not shown to have been an alien.

It is apparent that appellant's status cannot be disposed of without determining whether he must be considered to have been an alien within the meaning of the present Act in the years 1938 and 1939. This depends upon the significance of the words "shall be considered as if they were aliens" in the portion of the Philippine Independence Act which we have previously quoted.[2] Just what effect that section had in creating for the appellant a status which would bring him within the operative phraseology of the Internal Security Act of 1950 is not altogether free from doubt. In the first place there is the question whether the words "for the purposes of the Immigration Act of 1917 * * * and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens", has reference only to such laws then in effect, or whether it is intended to refer to all such laws enacted at any time in the future.

It is to be noted also that following the proclamation of Philippine Independence in 1946, Proclamation No. 2695, 22 U.S. C.A. § 1395 note, this section became completely obsolete and no longer had any effective reference to any one;[3] and in Del

2. This language was contained in § 8 of the Act of March 24, 1934, 48 Stat. 462, which read in part as follows: "Sec. 8(a) Effective upon the acceptance of this Act * * * (1) for the purposes of the Immigration Act of 1917, the Immigration Act of 1924 (except section 13(c)), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. For such purposes the Philippine Islands shall be considered as a separate country and shall have for each fiscal year a quota of fifty. * * * (b) The provisions of this section are in addition to the provisions of the immigration laws now in force, and shall be enforced as a part of such laws, and all the penal or other provisions of such laws not inapplicable, shall apply to and be enforced in connection with the provisions of this section."

3. It does not appear that during the years of its effective operation there was ever any occasion to apply any law relating to immigration, exclusion or expulsion of aliens to this appellant.

Guercio v. Gabot, supra, this court noted that Filipinos in the position of this appellant were not by this section made aliens but were merely to be considered as aliens for limited purposes. We said 161 F.2d at page 560: "It will be noticed that the statute did not classify the Filipino as an alien; it provided that he should be considered as an alien for the limited purposes of the statute. By unmistakable inference the Congress was acting upon the premise that the Filipino residing in the United States before Philippine independence was not an alien, and under the legislation in process he would, insofar as such legislation was effective, not be declared to be an alien." We went on to say, (although only by way of surmise): "It would seem that, in the absence of any other statute or treaty, the Filipino non-United States-citizen-resident would occupy the status of an alien only upon his native land becoming an independent nation."

If we assume, as we do, that the 1934 Act's reference to "all other laws * * * relating to the immigration, exclusion, or expulsion of aliens" comprehended not only such laws then in effect but also such as might thereafter be enacted, it is clear that if the appellant is now subject to deportation such must result not from what was said in the Act of March 24, 1934, but from what was said in the Internal Security Act of 1950. If appellant is deportable, it is by reason of the impact of the latter act. The question is whether the word "aliens" in subdivision (C)—"Aliens who are members of * * * the Communist Party", includes not only aliens in the ordinary sense but was intended to be broad enough to include persons who were in reality nationals of the United States but who under the provisions of the Act of March 24, 1934 were to be "considered as if they were aliens".

If it be conceded that the word "aliens" in the present Act might possibly be given so broad a construction, the most that could be said is that this possibility suggests an ambiguity. There is nothing to show that when Congress enacted the Internal Security Act, it had in mind the very special case of the Filipinos described in the quoted section of the Act of March 24, 1934. Clearly we deal here with an Act which, if it were to apply to this appellant, would have a punitive impact.[4] A person in appellant's situation obviously could be at the moment not only no longer a communist but a most vigorous, aggressive and useful anti-communist. If appellant is to be deported, it must be for some act which he long since may have repented.

We think that the rule of strict construction should be applied to a statute having this impact, and that subdivision (C) above quoted must be construed to use the word "aliens" in the ordinary sense and connotation, and not to include Filipinos who were for certain limited purposes to be "considered as * * * aliens", under a section of a law long since obsolete and inoperative. We think therefore that the Act here in question did not authorize the appellant's deportation.

There is a further reason why the appellant cannot be regarded as subject to deportation. § 4(a), quoted above, which authorizes the deportation of certain aliens, refers only to any alien "who was at the time of entering the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated", etc. While it is true that in a popular and non-technical sense the appellant did "enter" the United States in 1926, when he came here for permanent residence, yet in the sense of statutes relating to immigration, exclusion, citizenship and expulsion, Congress has always referred to "entering the United States" in a limited and technical sense. The word "enter" has always been used as a word

---

4. "Deportation can be the equivalent of banishment or exile". Delgadillo v. Carmichael, 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17; " * * * nothing can be more disingenuous than to say that deportation in these circumstances is not punishment". Del Guercio v. Gabot, supra, quoting from Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878, 879.

of art.[5] In that sense, when he came here in 1926, the appellant was not "entering the United States".[6] Such, precisely, is the effect of our decision in Del Guercio v. Gabot, supra. We hold that as the statute is phrased, the alien's prior entry in this sense is a condition precedent to the application of these provisions for deportation.

The judgment of the district court is reversed and the cause is remanded with directions to order the appellant's release from custody.

BONE, Circuit Judge (specially concurring).

I concur in the first part of Judge POPE's opinion which holds that Mangaoang is not a member of a deportable class, not having been simultaneously an alien and a member of the Communist Party. I have grave doubts and therefore reserve judgment concerning the validity of the second ground of the decision, i. e., that Mangaoang never "entered" the United States, and therefore is not deportable.

5. It was so treated in Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L. Ed. 17, approving Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878. The same idea is preserved in the Immigration and Nationality Act of June 27, 1952, 66 Stat. 166, Tit. 8, U.S.C.A. § 1101, as follows: "(13) The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception."

6. And at that time he was not to be "considered as" an alien, for the 1934 Act had not then been passed.