**Haruna DABONE, Appellant,**

v.

**Lyle L. KARN, District Director of the Immigration and Naturalization Service, District No. 4.**

No. 84–1372.

United States Court of Appeals, Third Circuit.

Argued Feb. 7, 1985.

Decided June 7, 1985.

Lawrence H. Rudnick, argued, Orlow, Fuller, Rubin & Steel, Philadelphia, Pa., for appellant.

Richard K. Willard, Acting Asst. Atty. Gen., Civ. Div., Lauri S. Filppu, Deputy Director, James A. Hunolt, Millicent Clark, argued, Office of Immigration Litigation, U.S. Dept. of Justice-Civ. Div., Washington, D.C., for appellee.

Before SEITZ, GIBBONS and SLOVI-TER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Facts

Petitioner Haruna Dabone, a citizen of Ghana, entered this country lawfully as a permanent resident alien on June 12, 1977, pursuant to his marriage to a United States citizen. Dabone was engaged in the import-export business dealing in Ghanaian goods. On June 19, 1979, following a trip abroad, he was arrested and charged with possession of fifteen pounds of marijuana. Following a guilty plea he was sentenced to two years of probation.

Thereafter, Dabone left the United States several times in connection with his import-export business and was admitted back into the country. On January 11,

1982, he went to London, Amsterdam, Liberia, and Ghana, obtaining visas for London and Amsterdam. When he returned to the United States on March 11, 1982, Dabone was not permitted to re-enter the country and was charged as excludable under Section 212(a)(23) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1182(a)(23), which requires exclusion of anyone convicted of illegal possession of marijuana. He was paroled into the United States, placed in exclusion proceedings, and found excludable in a decision rendered June 8, 1982. For reasons that remain unexplained on this record, that decision was not served on Dabone until more than a year later.

Although the time for filing an appeal had expired, the Board of Immigration Appeals (BIA) took jurisdiction by certification because of the delay in service. It affirmed the decision of the immigration judge on April 11, 1984 and notified Dabone that his deportation to Ghana was scheduled for June 26, 1984. On June 12, 1984 Dabone moved to stay deportation and to reopen the exclusion proceeding based on his contention that he had now been lawfully domiciled in the United States for 7 years and therefore had become eligible to apply for discretionary relief under Section 212(c), 8 U.S.C. § 1182(c). The request for a stay was denied on the ground that there was little likelihood of granting the motion to reopen. That motion remains pending. Dabone filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, which denied the writ but stayed deportation pending appeal.

On appeal Dabone challenges the propriety of placing him in exclusion proceedings and the BIA's failure to find that he made out a prima facie case of eligibility under § 212(c) of the Act in his motion to reopen. We turn first to the exclusion issue.

## II.

### Propriety of Exclusion Proceedings

Dabone argues that the BIA erred as a matter of law in finding that he was properly placed in exclusion proceedings. He contends that if the INS sought to deprive him of his resident alien status because of his conviction, it was obliged to do so through deportation procedures. Both parties agree that Dabone was deportable after his drug conviction. See Section 241(a)(11), 8 U.S.C. § 1251(a)(11). Dabone apparently seeks the benefit of the panoply of rights and procedures that attend deportation proceedings, but that are unavailable in exclusion proceedings. Of course, if he was properly placed in exclusion proceedings, it is irrelevant that the INS may also have had the option to use deportation proceedings against him.

■ Whether exclusion proceedings were appropriate depends on whether he made an "entry" on March 11, 1982. It is a general principle of immigration law that an alien who leaves the country and makes a new entry on his or her return is then subject to all current exclusionary laws. *Bonetti v. Rogers*, 356 U.S. 691, 698, 78 S.Ct. 976, 980, 2 L.Ed.2d 1087 (1958). The new entry stands the alien on the same footing as if it were the initial entry. Before the enactment of the Immigration and Naturalization Act of 1952, the term "entry" had been defined strictly as "any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one." *United States ex rel. Volpe v. Smith*, 289 U.S. 422, 425, 53 S.Ct. 665, 667, 77 L.Ed.2d 1298 (1933).

This restrictive approach was modified by subsequent decisions. When a train from Buffalo to Detroit carried an alien without knowledge that the route passed through Canada, the Second Circuit held the alien had not effected an entry. *DiPasquale v. Karnuth*, 158 F.2d 878, 879 (2d Cir.1947). The court, in an opinion by Judge Learned Hand, said that an entry requires intent and "demands knowledge by the alien that the route which he is to take will carry him across our borders." The Supreme Court approved the *DiPasquale* approach shortly thereafter. Faced

with a fact pattern where an alien on a merchant ship that was torpedoed during World War II was taken to Cuba for one week to recuperate, it held that the alien was not voluntarily on foreign soil. *Delgadillo v. Carmichael*, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 (1947). The Court ruled that there was no entry if the alien did not depart voluntarily. *Id.* at 391, 68 S.Ct. at 12.

These decisions were codified by Congress in the 1952 Act where it sought to define "entry" "as precisely as practicable". H.Rep. No. 1365, 82d Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.Code Cong. & Ad.News 1653, 1683–84. Section 101(a)(13) of that Act states that "entry" means:

> any coming of an alien into the United States from a foreign ... place ... whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry ... for the purposes of the immigration laws if the alien proves ... that his departure ... was not intended or reasonably to be expected by him or his presence in a foreign ... place ... was not voluntary.

8 U.S.C. § 1101(a)(13).[1]

Dabone recognizes that on the face of this statute, he clearly would have been attempting an "entry" when he returned to the United States in 1982. He argues, however, that his situation comes within the "judicial gloss" that he contends was added to the statutory definition by the Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). In that case, the Court reversed a deportation order entered against a resident alien whose only depar-

ture from the United States during the 11 years since his admission was for a visit of several hours to Mexico. The Court concluded that Congress intended the "unintended or involuntary" exception contained in the definition of entry to require "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Id.* at 462, 83 S.Ct. at 1812. The Court set forth the following non-exclusive list of the factors to be considered in deciding when a trip is "meaningfully interruptive": (1) the length of time of the absence, (2) whether the purpose of the trip was to accomplish an object contrary to a policy of the immigration law, or (3) whether the alien had to procure travel documents. *Id.*

■ Application of these factors to Dabone leads us to conclude, as did the BIA, that Dabone was effecting an entry. Dabone did not merely venture a few miles over the border for a few hours. He was out of the country for two months on a planned and purposeful journey. He travelled thousands of miles between three continents and he had to procure visas for admission into two of the countries he visited. Although he argues that "the casualness with which he engaged in international travel" and the numerous trips he made in and out of the United States are facts militating against finding a meaningfully interruptive departure, Brief for Appellant at 11, the Supreme Court suggested otherwise in *Fleuti* where it stated, "There are, of course, valid policy reasons for saying that an alien wishing to retain his classification as a permanent resident of this country imperils his status by interrupting his residence too frequently or for an overly

---

1. The full text of that definition is:

The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or

place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

Section 101(a)(13), 8 U.S.C. § 1101(a)(13) (emphasis in original).

long period of time." *Id.* at 461, 83 S.Ct. at 1811.

■ Dabone also argues that the BIA incorrectly placed the burden of proof on him. The BIA stated that "the lawful permanent resident alien bears the burden to prove he comes within this statutory exception to the entry definition." The BIA was correct. Section 101(a)(13) explicitly requires that the alien must "prove[] to the satisfaction of the Attorney General" that his departure was unexpected or unintended. Dabone confuses the burden of proof to show the applicability of the exception to "entry", which the Act places on the permanent resident alien, and the burden of proof to show that such an alien is excludable, which the INS concedes is placed on it. *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 35, 103 S.Ct. 321, 331, 74 L.Ed.2d 21 (1982); *In re Salazar*, 17 I. & N.Dec. 167, 169 (1979); *In re Kane*, 15 I. & N.Dec. 258, 264 (1975); *In re Becerra-Miranda*, 12 I. & N.Dec. 358, 363 (1967).

■ Dabone has failed to meet his burden of proving that his trip was "innocent, casual, and brief," *Fleuti*, 374 U.S. at 461. Thus, he was properly placed in exclusion proceedings.

### III.

*Eligibility for § 212(c) Relief*

■ On June 12, 1984, precisely seven years after Dabone entered the United States as a permanent resident alien, he filed a motion to reopen the exclusion proceedings to seek relief under § 212(c) of the Act, 8 U.S.C. § 1182(c). That section provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) to (25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

At the same time he requested a stay of deportation. Without formally ruling on the motion to reopen, the BIA denied the request for a stay of deportation stating that "the Board has concluded that there is little likelihood that the motion to reopen, when received, will be granted." Dabone then filed a petition for a writ of habeas corpus in the district court which is the exclusive means of gaining review in exclusion cases. *See* 8 U.S.C. § 1105a(b). The district court denied the writ.[2]

■ Denial of a motion to reopen is discretionary, and can be reviewed only under an arbitrary and capricious standard. *INS*

---

**2.** The government contends that Dabone's claim is premature because the BIA has not yet acted on the motion to reopen. Unlike the BIA's denial of a stay which is not reviewable, *see e.g., Bonilla v. INS*, 711 F.2d 43, 44 (5th Cir.1983), the BIA's denial of a motion to reopen can be reviewed. *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam) (reversing contrary decision at 308 F.2d 347 (9th Cir.1962)); *Bak v. INS*, 682 F.2d 441, 442 (3d Cir.1982) (per curiam). The need for prompt action is apparent, particularly when the petitioner, as Dabone, has been unable to secure a stay of deportation. The government's attorney stated at oral argument that the BIA's delay was entirely the fault of the BIA in failing to forward the motion to reopen, and was not at all attributable to Dabone. Transcript of Argument on February 7, 1985 at 20. A letter dated May 23, 1985 from counsel for the government confirms that the motion to reopen is still pending, some 11 months after it was filed. Under these circumstances, we may treat the Board's unjustified failure to act within a reasonable period as an effective denial of the motion to reopen. In any event, the defect does not go to our power to act since in these circumstances 28 U.S.C. § 1651 gives us the power to preserve our ability to pass on a matter within our statutory jurisdiction before it becomes moot by the deportation of the alien. *See Federal Trade Commission v. Dean Foods Co.*, 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966); *American Public Gas Asso. v. Federal Power Commission*, 543 F.2d 356, 358 (D.C.Cir.1976), *cert. dismissed*, 429 U.S. 1067, 97 S.Ct. 798, 50 L.Ed.2d 800 (1977). Moreover, the government did not contend in its brief in the district court that the merits on the motion to reopen were not ripe for decision.

*v. Rios-Pineda,* —— U.S. ——, ——, 105 S.Ct. 2098, 2099, 85 L.Ed.2d 452 (U.S. 1985). If Dabone has not accumulated the "lawful unrelinquished domicile of seven consecutive years," he would be ineligible for relief under § 212(c), and, *a fortiori,* the BIA would not have abused its discretion in failing to grant the motion to reopen. The BIA has taken the position that lawful permanent resident status ends, and with it lawful domicile, upon a final administrative finding of deportability or excludability. *In re Duarte,* Interim Dec. No. 2926 (BIA, Nov. 1, 1982). If the BIA's interpretation is erroneous as a matter of law, then the basis for the exercise of its discretion in this case may be undermined. *Cf. INS v. Stevic,* —— U.S. ——, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (upholding BIA's interpretation of standard of proof for refugee status).

In *Reid v. INS,* 756 F.2d 7 (3d Cir.1985), we rejected an alien's claim that the seven year period in § 212(c) continues to accrue until the alien actually departs from the United States pursuant to a lawful order of deportation. *Id.* at 9. Dabone argues, however, that we should adopt the rule applied by the Ninth Circuit in *Wall v. INS,* 722 F.2d 1442 (9th Cir.1984), that the seven-year period encompasses the time pending review of deportability by a court of appeals. *Wall* presented a substantially different situation than that presented here.

First, *Wall* was a deportation proceeding from which court of appeals review is available as a matter of law, 8 U.S.C. § 1105a(a). In an exclusion proceeding, as here, on the other hand, review is only through the writ of habeas corpus by the district court, 8 U.S.C. § 1105a(b), which does not issue automatically.

Second, the Ninth Circuit itself has just clarified that time awaiting discretionary relief should not be counted toward the seven-year lawful domicile. *Avila-Murrieta v. INS,* 762 F.2d 733, 735 (9th Cir.1985). Finally, the *Wall* court premised its decision on the existence of the automatic stay provision in Section 106(a)(3), 8 U.S.C. § 1105a(a)(3), which stays deportation once the petition for review is filed. This provision gives the alien a legal right to remain in the United States until a decision by the court of appeals. There is no analogous provision for an automatic stay under Section 106(b), 8 U.S.C. § 1105a(b), the section governing judicial review of exclusion proceedings. To the contrary, the statute provides for immediate deportation of excluded aliens. Section 237(a), 8 U.S.C. § 1227(a).

The substantial difference between the rights available to aliens in exclusion proceedings and those in deportation proceedings has been the subject of frequent comment. As the Court said in *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982):

> [A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.... [H]owever, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.

*See also Jean v. Nelson,* 727 F.2d 957, 967–68 (11th Cir.) (in banc), *cert. granted,* —— U.S. ——, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984).

It is not necessary for us to decide between the conflicting positions taken by the circuits in *Lok v. INS,* 681 F.2d 107 (2d Cir.1982), holding that an alien stops accruing time toward the seven years of lawful domicile when the deportation order becomes administratively final, and *Marti-Xiques v. INS,* 741 F.2d 350, 355 (11th Cir. 1984), where the court found lawful domicile ends when deportation proceedings begin. Since Dabone concededly did not have seven years domicile for purposes of § 212(c) at the time the BIA entered a final deportation order in April 1984, he would not have adequate time under either view.

We conclude that accrual of the seven years in an exclusion proceeding stops at least when the decision is administratively final. Since Dabone could not

make a prima facie showing of eligibility for discretionary relief, the BIA did not err in failing to grant Dabone's motion to reopen.

Accordingly, we will affirm the order of the district court denying Dabone's petition for a writ of habeas corpus. The mandate will issue forthwith.