OPINION OF THE COURT
C. Stephen Hackeling, J.
Via order to show cause dated July 24, 2007, the above-captioned respondent, James Mazzone, seeks relief in the form of a modification of this court’s order of June 25, 2007 directing the humane euthanizing of his two Rottweiler dogs, Cesare and *547 Nina. The modification requested is that said dogs not be euthanized and that they instead be ordered removed from the State of New York. The petitioner, Town" of Huntington, on behalf of the bite victims, opposes the requested relief. If spared, the respondent’s application advises that he will give up possession and title of the condemned dogs to a Rottweiler trainer who will immediately and permanently remove them from New York to a North Carolina farm “Rottweiler training facility.” At the hearing conducted on this order to show cause, the respondent’s counsel additionally orally requested that the court reconsider its euthanasia directive.
Factual History
After a hearing held June 18, 2007 upon the petition of the Town of Huntington dated June 13, 2007, the court determined that two of the respondent’s three Rottweilers were dangerous dogs as defined under section 121 of the Agriculture and Markets Law and also that sufficient aggravating circumstances exist to order that they be humanely euthanized. Specifically, the court determined that two of a three-dog pack of 100-plus-pound Rottweilers engaged in an unprovoked attack upon another dog and two men resulting in injury to all including the near severance of one victim’s ear. The male dog Cesare was the instigator of the attack and is the most aggressive of the three dogs. Said dogs are in the possession of the Town of Huntington dog warden pursuant to court order.[1] This order is pending appellate review and subject to a statutory stay.
Issue Presented
Does New York law allow the court to order dangerous dogs removed from New York State?
Discussion
The New York State Legislature gave its dangerous dog statute, section 121 of the Agriculture and Markets Law, a significant amendment overhaul in 2005. Relevant subdivisions of said statute now provide:
“§ 121. Dangerous dogs. . . .
“2. Any person who witnesses an attack or threatened attack . . . may, and any dog control officer or police officer as provided in subdivision one of this section shall, make a complaint. . . Thereupon, the *548 judge or justice shall immediately determine if there is probable cause to believe the dog is a dangerous dog and, if so, shall issue an order to any dog control officer, peace officer, acting pursuant to his special duties, or police officer directing such officer to immediately seize such dog and hold the same pending judicial determination as provided in this section. . . . The petitioner shall have the burden at such hearing to prove the dog is a ‘dangerous dog’ by clear and convincing evidence. If satisfied that the dog is a dangerous dog, the judge or justice shall then order neutering or spaying of the dog, micro-chipping of the dog and one or more of the following as deemed appropriate under the circumstances and as deemed necessary for the protection of the public:
“(a) evaluation of the dog by a certified applied behaviorist, a board certified veterinary behaviorist, or another recognized expert in the field and completion of training or other treatment as deemed appropriate by such expert. The owner of the dog shall be responsible for all costs associated with evaluations and training ordered under this section; “(b) secure, humane confinement of the dog for a period of time and in a manner deemed appropriate by the court but in all instances in a manner designed to: (1) prevent escape of the dog, (2) protect the public from unauthorized contact with the dog, and (3) to protect the dog from the elements pursuant to section three hundred fifty-three-b of this chapter. Such confinement shall not include lengthy periods of tying or chaining;
“(c) restraint of the dog on a leash by an adult of at least twenty-one years of age whenever the dog is on public premises;
“(d) muzzling the dog whenever it is on public premises in a manner that will prevent it from biting any person or animal, but that shall not injure the dog or interfere with its vision or respiration; or
“(e) maintenance of a liability insurance policy in an amount determined by the court, but in no event in excess of one hundred thousand dollars for personal injury or death resulting from an attack by such dangerous dog.
“3. Upon a finding that a dog is dangerous, the judge or justice may order humane euthanasia or *549 permanent confinement of the dog if one of the following aggravating circumstances is established at the judicial hearing held pursuant to subdivision two of this section:
“(a) the dog, without justification, attacked a person causing serious physical injury or death; or
“(b) the dog has a known vicious propensity as evidenced by a previous unjustified attack on a person, which caused serious physical injury or death; or
“(c) the dog, without justification, caused serious physical injury or death to a companion animal, farm animal or domestic animal, and has, in the past two years, caused unjustified physical injury or death to a companion or farm animal as evidenced by a ‘dangerous dog’ finding pursuant to the provisions of this section.”
Banishment
While not expressly stated, the relief requested by the petitioner can best be described as “banishment.” Said remedy is not specifically or inferentially provided for in New York’s dangerous dog statute, although it is this court’s experience that the majority of dangerous dog petitioners prefer and request this specific remedy. Few nonmunicipal petitioners request the drastic and irreversible remedy of euthanasia and most are unwilling to believe that the assortment of restraint alternatives are sufficiently foolproof to risk the safety of their’s and the afore-stated neighbors’ children. Generally, pro se petitioners initially request the dangerous dog’s banishment from their neighborhood as it serves to protect the community tranquility by removing the cause of concern without inflaming the hostilities that arise when neighbors seek the destruction of each other’s pets. This court has heretofore always advised that said relief is not available.
The Law
The court’s research indicates no relevant reported New York precedent involving animal banishment. While obviously different, the court is left to construct this decision from New York’s human-related banishment case law. Although the concept of banishment did enjoy popularity as a penal remedy in colonial and prerevolutionary times, it is a common-law doctrine which was never embraced under the laws of *550 New York.[2] Banishment from the State is not a sentence which is authorized by the Penal Law. (People v Marcial, 178 AD2d 493 [2d Dept 1991].) Civil banishments of persons are likewise generally prohibited as violations of federal and New York State constitutional guarantees of the right to travel. (City of New York v Andrews, 186 Misc 2d 533 [Sup Ct, Queens County 2000].)[3]
In the present case, the respondent advances the argument that the absence of an express prohibition in the law allows the court the equitable discretion to fashion the proposed alternative remedy of banishment. The court disagrees and is of the opinion that the Legislature’s failure to list banishment as a form of relief is an intended policy omission. In construing New York’s statutes, the Legislature has prescribed that the court follow the latin maxim “expressio unius est exclusio alteráis,” i.e., “where a law expressly describes a particular act ... an irrefutable inference must be drawn that what is not included was intended to be omitted and excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; see also, Doyle v Gordon, 158 NYS2d 248 [Sup Ct, NY County 1954].) For the same ethical reason that this court routinely declines to accede to pro se petitioners’ well meaning requests for an intrastate banishment from one neighborhood to another, it cannot participate as a state agent in the inflicting of a dangerous instrumentality upon a sister state. Surely, such an interstate tortious act would expose the parties and possibly the State of New York to the violation of a myriad of federal laws and regulations.
The respondent’s oral application for reargument is summarily denied. However, the court would be amenable to reconsider its decision premised upon a formal written application which conforms with the requirements of CPLR 2221 and contains an evaluation by an independent certified applied *551 behaviorist or an independent veterinary behaviorist indicating that Cesare is redeemable, together with a proposed third-party behavior modification training program, a voluntary restraint and microchipping agreement and agreement to procure the maximum liability insurance policy provided by the law.

. Apparently, Nina recently died in the. dog warden’s custody.

. Interestingly, federal law recognizes the doctrine of banishment. The United States Supreme Court has expressly held that deportation is a drastic measure and at times “the equivalent of banishment.” (Fong Haw Tan v Phelan, 333 US 6, 10 [1948]; Delgadillo v Carmichael, 332 US 388 [1947].) The removal of criminal aliens from the United States (banishment) pursuant to federal statute is authorized. (See, Fong Haw Tan v Phelan, 333 US 6 [1948].)

. However, there exist limited exceptions to this rule for sex related offenders which generally involve the banished individual’s consent as a bargained for alternative to incarceration. (See, People v Coleman, 11 Misc 3d 1019 [Sup Ct, Kings County 2006].)