J. S50011/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JULIAN DAIN McDONALD, | : | No. 1721 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, September 25, 2013,
in the Court of Common Pleas of Bedford County
Criminal Division at No. CP-05-CR-0000328-2009

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED OCTOBER 14, 2014**

Julian Dain McDonald appeals from the order of September 25, 2013, denying his PCRA[1] petition.  We affirm.

On August 1, 2009, at approximately 8:47 a.m., Pennsylvania State Police Trooper Steven Lucia stopped a silver Chrysler on the Pennsylvania Turnpike for tailgating a mini-van.  ***Commonwealth v. McDonald***, Nos. 1765 & 1789 WDA 2010, unpublished memorandum at 2 (Pa.Super. filed July 27, 2011).  Appellant was the passenger; his brother and co-defendant, Michael McDonald, was the driver.  ***Id.*** at 3.  Trooper Lucia testified that when appellant rolled down his window, he immediately smelled an overwhelming odor of raw marijuana emanating from the vehicle.

---

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

*Id.* Neither appellant nor his brother could produce a valid driver's license. *Id.* at 3-4. The registration card identified the vehicle as an Alamo rental vehicle. *Id.* at 4.

Trooper Lucia testified that both men were extremely nervous. *Id.* Their hands were shaking uncontrollably; they were breathing heavily and avoiding eye contact. *Id.* Appellant's face was twitching, and the artery in his neck was visibly pounding. *Id.* Trooper Lucia also observed in plain view three cell phones, a GPS unit, a large amount of Red Bull energy drinks, fast food wrappers, and a spray can of air freshener. *Id.* The rental agreement provided to Trooper Lucia was expired; it indicated that the vehicle had been rented in Philadelphia on July 20, 2009, and was to be returned on July 28, 2009. *Id.* at 5. There was no indication that the terms of the agreement had been extended. *Id.* Furthermore, the renter of the vehicle was listed as Kelly Haranczak, who was not present. *Id.* Neither appellant nor his brother was listed as an authorized driver of the Chrysler vehicle. *Id.*

When Trooper Lucia ran their driver's licenses, he discovered that appellant's was suspended and Michael's had expired. *Id.* Trooper Lucia returned to the car and again smelled the "obvious overwhelming odor of raw marijuana coming from the vehicle." *Id.* at 6. Trooper Lucia informed Michael that he was going to give him traffic warnings for following the mini-van too closely and for driving with an expired license, but would not

cite him. *Id.* Trooper Lucia asked Michael who had rented the Chrysler, and he responded, "Kelly." *Id.* at 7. Michael informed Trooper Lucia that Kelly was his girlfriend. *Id.* Appellant also confirmed that Kelly had rented the vehicle; however, he was unable to produce her last name. *Id.* at 8. Trooper Lucia testified that both men appeared to be extremely nervous, even though he had told them they would not be receiving a traffic citation. *Id.* at 7-8.

At this point, Trooper Lucia told appellant that he was smelling an odor of marijuana coming from the vehicle, and asked if there was anything like that in the vehicle; appellant replied, "No." *Id.* at 8. Trooper Lucia asked for consent to search the vehicle, which was denied. *Id.* Michael also denied consent to search, indicating that he had "to be somewhere." *Id.* at 9. At that point, Trooper Lucia called for back-up and told appellant and Michael that he intended to search the vehicle. *Id.* Trooper Lucia discovered $1,080 in cash in a handbag in the back seat, and a large cellophane wrapped bundle of suspected marijuana in the trunk. *Id.* at 10. At the completion of the search, police recovered 177 pounds of marijuana. *Id.*

Appellant and Michael filed a joint motion to suppress physical evidence which was denied. They proceeded to a jury trial as co-defendants, and were found guilty of one count each of possession with intent to deliver a controlled substance ("PWID"), possession of drug

paraphernalia, and criminal conspiracy. On October 18, 2010, they were each sentenced to an aggregate of 6 to 11 years' incarceration.[2] They filed separate notices of appeal; however, the cases were consolidated on appeal. In an unpublished memorandum filed July 27, 2011, this court affirmed the judgments of sentence; and on February 23, 2012, our supreme court denied allowance of appeal. ***Commonwealth v. McDonald***, 433 WAL 2011 (Pa. filed February 23, 2012) (***per curiam***).

On March 15, 2012, appellant filed a timely ***pro se*** PCRA petition. Counsel was appointed, and filed amended petitions on appellant's behalf. Following an evidentiary hearing, at which appellant and his brother Michael testified, appellant's petition was denied. This timely appeal followed. Appellant has complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the PCRA court has filed an opinion, relying on its prior memorandum of September 25, 2013.

Appellant has raised the following issues for this court's review:

1. Whether the trial court erred in denying appellant's petition for [PCRA] relief where newly discovered evidence unavailable at the time of trial was exculpatory and would have changed the outcome of the trial?

2. Whether the trial court erred in failing to find trial counsel ineffective for failing to move to sever appellant's case from that of his co-defendant prior to trial?

---

[2] The five-year mandatory minimum for the PWID conviction was also the statutory maximum, resulting in a flat sentence.

> 3. Whether the trial court erred in failing to find trial counsel ineffective for failing to advise appellant that a conviction for a felony drug offense could result in his deportation from the United States?

Appellant's brief at 4.

Initially, we recite our standard of review:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Halley**, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa.Super.2001).

**Commonwealth v. Turetsky**, 925 A.2d 876, 879 (Pa.Super. 2007), **appeal denied**, 940 A.2d 365 (Pa. 2007).

In his first issue on appeal, appellant claims he is entitled to a new trial based on newly discovered evidence. Appellant presented an affidavit from his brother and co-defendant, Michael, which states:

> I Michael D. Mcdonald swear that on August 1, 2009 [I] acted alone in the criminal activity that i [sic] am now incarcerated for, furthermore it is my sworn statement that [appellant] had no knowledge of the events that took place on the above mentioned day. It is my sworn testimony that I Michael D. Mcdonald acted alone and in no way conspired with [appellant].

Petitioner's Exhibit A; affidavit of Michael Dain McDonald, 3/11/13 at 1.

At the PCRA hearing on June 27, 2013, Michael McDonald testified that the drugs were his and that appellant had no idea they were there. (Notes

of testimony, 6/27/13 at 14.) When asked why he waited until March 11, 2013, to say anything, Michael testified that he was scared. (*Id.* at 15.) According to Michael, he did not make this information available to appellant until March 2013:

> My -- since I've been incarcerated, it's been eating me alive. It's just now, I really, really come to me to come out with the truth. Because it's just been me holding that in. I couldn't do it no [sic] more. I just, I just couldn't because he didn't have nothing [sic] to do with this and at that point, that's the time I gave up and I just say, I'm just going to let it out. I don't know, so.

*Id.* at 18-19.

Appellant is proceeding under Section 9543(a)(2)(vi) of the PCRA statute. According to that subsection, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from: "The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).

> [Section] 9543(a)(2)(vi) provides for post-conviction relief where a petitioner could prove a claim of newly discovered exculpatory evidence. In order to succeed on such a claim, the petitioner must establish by a preponderance of the evidence that: (1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) such evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) such evidence would likely compel a different verdict.

*Commonwealth v. Fiore*, 780 A.2d 704, 711 (Pa.Super. 2001), *appeal granted*, 797 A.2d 910 (Pa. 2002), *appeal dismissed*, 817 A.2d 1080 (Pa. 2003), citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 94 (Pa. 1998) (citations omitted).

We agree with the PCRA court that Michael's affidavit is not newly discovered evidence in any traditional sense. (PCRA court opinion, 9/25/13 at 4.) Obviously, appellant knew from day one whether or not he was aware of the marijuana in the trunk of the car. *Commonwealth v. Washington*, 927 A.2d 586 (Pa. 2007), is instructive. In that case, the appellant's co-defendant, Derrick Teagle ("Teagle"), who did not testify, asserted that he, not the appellant, fired the fatal shot and that he lied to police about the appellant being the shooter to avoid the death penalty. *Id.* at 596. Teagle claimed that the shooting was an accident. *Id.* The appellant filed a PCRA petition asserting that Teagle's declaration constituted newly discovered evidence compelling a new trial. *Id.*

Our supreme court noted that Teagle's confession-declaration was not technically a recantation because he did not testify against the appellant at trial and his statement to police was only admitted as evidence against him, not the appellant. *Id.* at 597. Therefore, his declaration was not a true recantation. *Id.* Nevertheless, the *Washington* court analyzed Teagle's declaration consistently with prior jurisprudence pertinent to recantation evidence; Teagle's current assertion contradicted his pre-trial statement to

police and was a confession to the crime for which the appellant was convicted and sentenced. ***Id.***

The ***Washington*** court observed that the PCRA court implicitly found Teagle's affidavit not to be credible. ***Id.*** The PCRA court analyzed Teagle's confession and noted that he had nothing to lose in contradicting his pre-trial statement. ***Id.*** The PCRA court concluded that the evidence was not truly after-discovered and was not persuasive evidence of the appellant's innocence. ***Id.***

Similarly, here, the PCRA court listened to Michael McDonald's testimony and found him not to be credible. (PCRA court opinion, 9/25/13 at 4.) The PCRA court observed that, similar to Teagle in the ***Washington*** case, Michael was already convicted and sentenced for the crime and "has nothing to lose." (***Id.***) It should also be noted that Michael and appellant are brothers and so Michael has a motive to give false testimony. In addition, Michael's affidavit should be viewed the same as recanting testimony, which has been recognized as "exceedingly unreliable." ***Commonwealth v. Loner***, 836 A.2d 125, 135 (Pa.Super. 2003), ***appeal denied***, 852 A.2d 311 (Pa. 2004).

In fact, at the arraignment, appellant took full responsibility for the crime. Appellant stated that Michael "had no idea about anything," that he was "very sorry," and he claimed the luggage in the vehicle as his alone. (Notes of testimony, 6/27/13 at 50.) Appellant told the magisterial district

judge who arraigned him on these charges that he had made a mistake and was very disappointed in himself. (**Id.**) So, as the PCRA court observes, either Michael or appellant is lying. (PCRA court opinion, 9/25/13 at 4.) Both of them have taken sole responsibility for the crime and claimed that the other brother knew nothing. (**Id.**) The PCRA court's conclusion that Michael's affidavit is simply not believable is fully supported by the record and will not be disturbed on appeal. The PCRA court did not err in denying appellant's newly discovered evidence claim.

Appellant's final two issues relate to trial counsel ineffectiveness. Appellant argues that trial counsel, Steven Passarello, Esq., was ineffective for failing to move to sever his case from that of his co-defendant, and for failing to advise him that a conviction for a felony drug offense could result in deportation proceedings.

> "To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." **Commonwealth v. Wallace**, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing **Commonwealth v. Howard**, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a "'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Commonwealth v. Kimball**, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting **Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984). A "'[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" **Id.** at 309, 724 A.2d at 331, quoting **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052.

**Commonwealth v. Jones**, 811 A.2d 1057, 1060 (Pa.Super. 2002), **appeal denied**, 832 A.2d 435 (Pa. 2003). "We presume counsel is effective and place upon Appellant the burden of proving otherwise. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004) (citations omitted).

"The decision to sever co-defendants' trials lies within the trial court's discretion, and will not be disturbed absent an abuse thereof." **Commonwealth v. Birdsong**, 611 Pa. 203, 232, 24 A.3d 319, 336 (2011).

Joint trials are favored when judicial economy will be served by avoiding the expensive and time-consuming duplication of evidence, and where the defendants are charged with conspiracy.

[T]he mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials. In fact, it has been asserted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.

*Commonwealth v. Akbar*, 91 A.3d 227, 231-232 (Pa.Super. 2014), quoting *Birdsong, supra* (internal citations and quotation marks omitted) (emphasis deleted).

At trial, the court ruled that appellant's statement to police that Michael's girlfriend rented the vehicle was inadmissible because it could implicate Michael and was a *Bruton* violation.[3] (Notes of testimony, 9/9/10 at 14-16.) The jury could infer that perhaps Kelly put the marijuana in the car or had some part in it, thereby also implicating Michael. (*Id.*) According to appellant, trial counsel should have moved to sever the cases because at a separate trial, this statement could have come in as evidence that Michael and/or his girlfriend, and not appellant, put the marijuana in the trunk. (Appellant's brief at 16.)

Appellant's argument ignores the fact that, as stated above, Michael also told Trooper Lucia that Kelly, his girlfriend, had rented the vehicle. (Notes of testimony, suppression, 2/9/10 at 30-31.) This statement was not suppressed. (Notes of testimony, 9/9/10 at 14.) Therefore, the jury heard that Kelly was Michael's girlfriend and the rental agreement was in her name. Appellant cannot show how he was prejudiced by counsel's failure to file a severance motion.

---

[3] *See Bruton v. U.S.*, 391 U.S. 123, 135-137 (1968) (admission of a facially incriminating confession by a non-testifying co-defendant introduced at the defendant and co-defendant's joint trial, deprives a defendant of his Sixth Amendment right to confrontation, even where the court instructs the jury to consider the confession only against the co-defendant).

In addition, the PCRA court states that Michael did file a motion to sever which was denied, and appellant's would have been similarly denied. (PCRA court opinion, 9/25/13 at 7.) There was no basis to sever the cases, particularly where appellant and Michael were charged as co-conspirators. This claim fails.

Finally, appellant argues that trial counsel was ineffective for failing to advise him of the immigration consequences of being found guilty of a felony drug offense. Apparently, appellant is a Jamaican national and faces deportation proceedings as a result of his conviction. Appellant relies on *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010), in which the United States Supreme Court held that counsel must inform his client whether his plea carries a risk of deportation.

> Jose Padilla, a Honduran native who had lived in the United States for more than 40 years, pled guilty to transportation of a large amount of marijuana, a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i). *Padilla*, 130 S.Ct. at 1477. Padilla claimed that counsel not only failed to advise him of the possibility of deportation prior to entering the plea, but also told him that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 1478. Padilla relied on counsel's erroneous advice when he pleaded guilty to the drug charges, and alleged in his post-conviction petition that he would have gone to trial had he not received incorrect advice from his attorney. *Id.*
>
> Noting the "unique nature of deportation," the *Padilla* Court decided that, "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 1481-1482. The Court found

> that, although civil in nature, "deportation is nevertheless intimately related to the criminal process" (*id.* at 1481), and concluded that "The severity of deportation -- 'the equivalent of banishment or exile,' -- only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 1486, quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391 (1947) (footnote omitted). Ultimately, the Court in *Padilla* remanded the matter for a determination as to whether Padilla could demonstrate that he was prejudiced by counsel's incorrect advice. *Id.* at 1487.

*Commonwealth v. Wah*, 42 A.3d 335, 339-340 (Pa.Super. 2012).

Instantly, appellant's reliance on *Padilla* is misplaced where he did not enter a guilty plea. Rather, appellant went to trial and was found guilty by a jury. Therefore, the *Padilla* line of cases is inapposite. Appellant argues that without knowing about the potential for deportation, appellant could not make a knowing and voluntary decision whether to go to trial or try to negotiate a plea. (Appellant's brief at 17.) Appellant contends that if he had known he could be deported for a felony drug conviction, he could have tried to negotiate a plea to a lesser, non-deportable offense. (*Id.*)

However, by taking a plea, Padilla was exposing himself to certain deportation. By exercising his right to a jury trial, appellant did not face the certainty of being deported. He could conceivably have been found not guilty. In addition, appellant has a constitutional right to a jury trial but not to enter a plea. The Commonwealth can force a trial if it chooses. Appellant has cited no case law for the proposition that the holding in *Padilla* extends

to cases where the defendant is found guilty after a jury trial, and we are aware of none. This claim also fails.

Having determined, for the reasons discussed above, that the PCRA court did not err in denying appellant's petition, and that appellant is not entitled to PCRA relief, we will affirm the order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/14/2014